793 So.2d 230 (2001)
Jeffrey Lane SHOEMAKER, Individually and on behalf of his Minor Child, Wesley James Shoemaker, Plaintiff-Appellant,
v.
Antonino GIACALONE and Shooters Saloon, Inc., Defendant-Appellee.
No. 34,809-CA.
Court of Appeal of Louisiana, Second Circuit.
June 20, 2001.
Rehearing Denied August 16, 2001.
*231 Joey W. Hendrix, Counsel for Appellant.
*232 Wiener, Weiss & Madison by R. Joseph Naus, Geoffrey D. Westmoreland, Shreveport, Counsel for Appellee.
Before PEATROSS, KOSTELKA and DREW, JJ.
KOSTELKA, J.
This appeal arises from the First Judicial District Court, Parish of Caddo, the Honorable Frank H. Thaxton, III, presiding. A summary judgment dismissing defendant, Antonio Giacalone ("Giacalone"), was granted and plaintiff, Jeffrey Lane Shoemaker, individually and on behalf of his minor child, Wesley James Shoemaker, appeals. For the following reasons, we affirm.

FACTS
This matter stems from a barroom fight that occurred on January 1, 1997, about 2:00 a.m., between one Timothy Godwin and Jeffrey Lane Shoemaker ("Shoemaker") at Shooters Saloon, which was owned and operated by Shooters Saloon, Inc. ("Shooters"). As a result of the altercation, Shoemaker suffered serious injuries.
Shoemaker filed suit individually and on behalf of his minor son, Wesley James Shoemaker, against Shooters and Giacalone, the sole shareholder, alleging that the negligent acts of Shooters' employees were the proximate cause of the injuries suffered by Shoemaker. In his Amended Petition for Damages, Shoemaker additionally claimed that Giacalone was Shooters' alter ego and, as such, was personally liable for the debts and liabilities of Shooters.
Giacalone filed a motion for summary judgment, arguing that as sole shareholder of Shooters, a validly-organized Louisiana corporation, he should be allowed the shield of personal liability granted shareholders under Louisiana law.
On January 5, 1999, a summary judgment dismissing Giacalone from the suit was signed. On January 7, 1999, Shoemaker filed a motion and order for suspensive appeal which was granted. On March 9, 1999, this court dismissed the appeal without prejudice for failure to obtain certification of the summary judgment as final and appealable in accordance with La. C.C.P. art. 1915 as it then existed. On July 19, 1999, Shoemaker filed with the trial court a motion and order to have the summary judgment certified as final and appealable which was first denied and then granted at the request of both parties on September 5, 2000. Shoemaker now appeals the judgment.

DISCUSSION
Appellate courts review summary judgments de novo under the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Eason v. Finch, 32,157 (La.App.2d Cir.08/18/99), 738 So.2d 1205, writ denied 99-2767 (La.12/10/99), 751 So.2d 861.
The summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action, except those disallowed by law; the procedure is favored and must be construed to accomplish these ends. La. C.C.P. art. 966(A)(2). The burden of proof nevertheless remains with the mover. La. C.C.P. art. 966(C)(2). A motion for summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
The party moving for summary judgment may simply point out to the court that there is an absence of factual support for one or more elements essential to the *233 adverse party's claim, action or defense. The party opposing summary judgment cannot rest on the mere allegations or denials of his pleadings, but must show that he has evidence which, if believed, could satisfy his evidentiary burden of proof at trial. If he has no such evidence, then there is no genuine issue of material fact, and the movant is entitled to summary judgment. La. C.C.P. art. 966(C)(2). See, Eason, supra, 738 So.2d at 1208; Clark v. City of Shreveport, 31,407 (La. App.2d Cir.01/20/99), 726 So.2d 1042, writ denied, 99-0502 (La.04/01/99), 742 So.2d 872; Lee v. Wall, 31,468 (La.App.2d Cir.01/20/99), 726 So.2d 1044; Gardner on Behalf of Gardner v. Louisiana State University Medical Center in Shreveport, 29,946 (La.App.2d Cir.10/29/97), 702 So.2d 53.
Here, Shoemaker is attempting to hold Giacalone personally liable for the liability of Shooters, a validly organized corporation of which Giacalone is the sole shareholder.
A corporation is a separate entity from its shareholders. La. C.C. art. 24. First Downtown Development v. Cimochowski, 613 So.2d 671 (La.App. 2d Cir.1993), writ denied, 615 So.2d 340 (La.1993); Cahn Elec. Appliance Co. v. Harper, 430 So.2d 143 (La.App. 2d Cir.1983); Fina Oil and Chemical Co. v. Amoco Production Co., 95,1877 (La.App. 1st Cir.05/10/96), 673 So.2d 668, writ denied, 96-1446 (La.09/27/96), 679 So.2d 1353. "A shareholder of a corporation organized after January 1, 1929, shall not be liable personally for any debt or liability of the corporation." La. R.S. 12:93(B).
Under very limited circumstances, an individual shareholder can be held personally responsible for the debts of the corporation. The determination of whether the corporate veil has been pierced and the corporation is merely the "alter ego" of the shareholder, as claimed by Shoemaker, is made by considering the totality of the circumstances. Cahn Electric, 430 So.2d at 145. Fina Oil, 673 So.2d at 673. But the involvement of a sole or majority shareholder in a corporation is not sufficient alone to establish a basis for disregarding the corporate entity. Fina Oil, supra. Louisiana courts are very hesitant to hold a shareholder, officer or director personally liable for corporate obligations. First Downtown Development, 613 So.2d at 675. It should be kept in mind that in Louisiana the concept of the separation of the corporate entity from those who compose it is the general rule and is firmly established. First Downtown Development, 613 So.2d at 675, citing American Bank of Welch v. Smith Aviation, Inc., 433 So.2d 750, 752 (La.App. 3d Cir.1983); La. C.C. art. 24.
To "pierce the corporate veil" or find that a corporation is an alter ego of an individual, the courts traditionally look to five factors that, when considered with the totality of the evidence, indicate that the individual and the corporation were not actually separate entities: (1) commingling of corporate and shareholder funds; (2) failure to follow statutory formalities required for incorporation and for the transaction of corporate affairs; (3) undercapitalization; (4) failure to provide separate bank accounts and bookkeeping records; and, (5) failure to hold regular shareholder or director meetings. Cahn Electric, supra at 145, citing Smith-Hearron v. Frazier, Inc., 352 So.2d 263 (La.App. 2d Cir. 1977), writ denied, 353 So.2d 1337 (La. 1978).
When shareholders assert the corporate shield as a defense from liability, the shareholders have the initial burden of proving the existence of the corporation. Once that burden is met, the party seeking to disregard the corporate shield must *234 show the exceptional circumstances which merit piercing the corporate veil and holding the individual shareholders liable. Fina Oil, 673 So.2d at 674.
According to Giacalone and the exhibits produced in support of his motion for summary judgment, he acquired his interest in Shooters from Gary Brooks ("Brooks") effective January 1, 1996. Since Shooters was indebted to creditors at the time of Giacalone's purchase, he agreed to continue that corporation and thus assume those debts. The corporation was formed in accordance with the various state requirements and all of the stock was properly transferred to Giacalone by Brooks. We conclude that Shooters met its initial burden of proving the valid existence of the corporation.
Shooters having met its initial burden, the burden shifted to Shoemaker to show exceptional circumstances which merit piercing the corporate veil and holding Giacalone personally liable. Shoemaker argues on appeal that because Giacalone failed to insure Shooters and because the corporation was undercapitalized, the corporate veil should be pierced. However, Shoemaker fails to present evidence of the alleged undercapitalization other than his allegations. There is no evidence in the record regarding what kind of capital a business of this type would normally have and no evidence that Giacalone was deliberately keeping the business undercapitalized or depleting its assets. Further, the assertion that failure to obtain insurance on a corporation results in undercapitalization or operates in some other way to pierce the corporate veil is without support.
Moreover, the evidence before this court shows Giacalone did not commingle his separate funds with the corporate funds. When Giacalone lent money to Shooters, he deposited the money in the corporate account rather than write checks for corporate debts from his personal account. Income to Shooters was deposited into its separate account, from which its creditors were paid. Giacalone had an accountant keep track of Shooters' business affairs, including the bank accounts and bookkeeping records. All business permits and licenses were in the name of Shooters Saloon, Inc.
A reasonable trier of fact could not conclude that Shoemaker met his burden of showing that the corporation was merely the alter ego of Giacalone. His assertion that Shooters was undercapitalized is without any evidentiary support, and his assertion that failure to obtain insurance suffices to pierce the corporate veil is without legal support. The principle cases on which Shoemaker relies, Dillman v. Nobles, 351 So.2d 210 (La.App. 4th Cir.1977); Giuffria v. Red River Barge Lines, Inc., 452 So.2d 793 (La.App. 4th Cir.1984), writ denied, 458 So.2d 118 (La.10/12/84); and Sparks v. Progressive American Insurance Co., 517 So.2d 1036 (La.App. 3d Cir. 1987), writ denied, 519 So.2d 106 (La.12/18/87), are distinguishable factually and otherwise inapplicable.

CONCLUSION
For the reasons set forth above, the judgment dismissing Giacalone from the suit is affirmed at Shoemaker's costs.
AFFIRMED.

APPLICATION FOR REHEARING
Before NORRIS, C.J., CARAWAY, PEATROSS, KOSTELKA, and DREW, JJ.
Rehearing denied.